# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW WHITFIELD, | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. _____ |
| | : |
| | : JURY TRIAL DEMANDED |
| PROOFPOINT, INC., GARY STEELE, | : |
| DANA EVAN, ELIZABETH RAFAEL, | : **COMPLAINT FOR VIOLATION OF THE** |
| JONATHAN FEIBER, KEVIN HARVEY, | : **SECURITIES EXCHANGE ACT OF 1934** |
| KRISTEN GIL, LEYLA SEKA, MICHAEL | : |
| JOHNSON, and RICHARD WALLACE, | : |
| Defendants. | : |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On April 25, 2021, Proofpoint, Inc. ("Proofpoint" or the "Company") entered into an agreement (the "Merger Agreement") to be acquired by affiliates of Thoma Bravo, L.P. ("Thoma Bravo"), Project Kafka Parent, LLC ("Parent") and Project Kafka Merger Sub, Inc. ("Merger Sub") (together, "Project Kafka") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Proofpoint's stockholders will receive $176.00 per share in cash.

3. On June 14, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy omits material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is and has been continuously throughout all relevant times the owner of Proofpoint common stock.

9. Defendant Proofpoint is a Delaware corporation. Proofpoint's common stock is traded on the NASDAQ under the ticker symbol "PFPT."

10. Defendant Gary Steele is Chief Executive Officer and Chairman of the Board of Directors of Proofpoint (the "Board").

11. Defendant Dana Evan is a member of the Board.

12. Defendant Elizabeth Rafael is a member of the Board.

13. Defendant Jonathan Feiber is a member of the Board.

14. Defendant Kevin Harvey is a member of the Board.

15. Defendant Kristen Gil a member of the Board.

16. Defendant Leyla Seka is a member of the Board.

17. Defendant Michael Johnson is a member of the Board.

18. Defendant Richard Wallace is a member of the Board.

19. Defendants identified in paragraphs 10-18 are referred to as the "Individual Defendants."

<h2 style="text-align:center">SUBSTANTIVE ALLEGATIONS</h2>

20. Proofpoint is a leading cybersecurity and compliance company.

21. On April 25, 2021, Proofpoint entered into the Merger Agreement. Under the terms of the Merger Agreement, Proofpoint's stockholders will receive $176.00 per share.

22. The press release announcing the Proposed Merger provides as follows:

Proofpoint, Inc., (NASDAQ: PFPT) (the "Company"), a leading cybersecurity and compliance company, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading private equity investment firm focused on the software and technology-enabled services sector, in an all-cash transaction that values Proofpoint at approximately $12.3 billion.

Under the terms of the agreement, Proofpoint shareholders will receive $176.00 per share in cash, representing a premium of approximately 34 percent over Proofpoint's closing share price on April 23, 2021, the last full trading day prior to the transaction announcement, and a premium of approximately 36 percent over Proofpoint's three-month volume-weighted average closing share price through April 23, 2021. Upon completion of the transaction, Proofpoint will become a private company with the flexibility and resources to continue providing the most effective cybersecurity and compliance solutions to protect people and organizations around the world. Additionally, Proofpoint will benefit from the operating capabilities, capital support and deep sector expertise of Thoma Bravo – one of the most experienced and successful software investors in the world.

"Today's announcement is a testament to the strength of Proofpoint's people-centric approach to cybersecurity and compliance and underscores our important role preventing, defending and responding to today's threats," said Gary Steele, Chairman and CEO of Proofpoint. "We have made tremendous strides in expanding the sophistication and scale of our offerings, and in 2020 we generated more than $1 billion in annual revenue – making Proofpoint the first SaaS-based cybersecurity and compliance company to reach that milestone. We believe that as a private company, we can be even more agile with greater flexibility to continue investing in innovation, building on our leadership position and staying ahead of threat actors. Thoma Bravo is an experienced software investor, providing capital and strategic support to technology organizations, and our partnership will accelerate

Proofpoint's growth and scale at an even faster pace. This is an exciting new chapter for Proofpoint that would not have been possible without our employees' hard work and commitment to our customers, partners and each other."

Dana Evan, Lead Independent Director of the Proofpoint Board of Directors, said, "We are confident that this transaction is a great outcome for our shareholders, our employees, our customers and our Company. Following Thoma Bravo's approach, we thoroughly reviewed the proposal with the assistance of independent financial and legal advisors. We determined this premium, all-cash offer and partnership would create immediate and certain value for shareholders and help us achieve our operational and market ambitions more quickly for the benefit of our customers. Today's announcement is a credit to the Proofpoint team which has delivered outstanding operating performance without ever losing sight of our customers, positioning the Company to capture significant value for our shareholders."

"Proofpoint has achieved tremendous outcomes for customers around the world, and we're excited to partner with this talented team at a moment when organizations need innovative solutions to navigate an increasingly treacherous cybersecurity environment," said Seth Boro, a Managing Partner at Thoma Bravo. "Proofpoint places people at the center of its compliance and security strategy and plays a vital role in helping enterprises protect their data. Thoma Bravo's approach to value creation is rooted in partnering with the organization in which we invest and looking for opportunities to both enhance their existing operations and build technology platforms that drive significant growth. Proofpoint's opportunity as a privately held company is incredibly compelling, and we look forward to working closely with them to drive continued business growth and deliver world-class advanced threat protection to even more customers in even more ways."

**TRANSACTION CONSIDERATIONS**

Proofpoint's Board of Directors ("the Board") has unanimously approved the agreement with Thoma Bravo and recommends that Proofpoint shareholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction.

The agreement includes a 45-day "go-shop" period expiring on June 9, 2021, which allows the Board and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties. The Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Proofpoint does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

The transaction is expected to close in the third quarter of 2021, subject to customary closing conditions, including approval by Proofpoint shareholders and receipt of regulatory approvals. Upon closing of the transaction, Proofpoint's

common stock will no longer be listed on any public market. The Company will continue to be headquartered in Sunnyvale, California.

**ADVISORS**

Morgan Stanley & Co. LLC is acting as exclusive financial advisor to Proofpoint, and Skadden, Arps, Slate, Meagher & Flom LLP is acting as its legal counsel. Financing for the transaction is being provided by Goldman Sachs & Co. LLC. Goldman Sachs & Co. LLC is also serving as financial advisor to Thoma Bravo, and Kirkland & Ellis LLP is serving as its legal counsel.

23. On June 14, 2021, defendants filed the Proxy, which omits material information regarding the Proposed Merger.

<u>Financial Analyses</u>

24. The Proxy omits material information regarding the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

25. The Proxy fails to disclose the following with respect to Morgan Stanley's Public Trading Comparables Analysis: (i) the individual multiples for the companies; (ii) levered free cash flows and all underlying line items; and (iii) the consensus equity analyst research estimates.

26. The Proxy fails to disclose the following with respect to Morgan Stanley's Discounted Equity Value Analysis: (i) levered free cash flows and all underlying line items; (ii) the inputs and assumptions underlying the discount rates; and (iii) the fully diluted outstanding shares of Proofpoint common stock.

27. The Proxy fails to disclose the following with respect to Morgan Stanley's Discounted Cash Flow Analysis: (i) the terminal values; (ii) the inputs and assumptions underlying the discount rates; and (iii) the line items used to calculate unlevered free cash flow.

28. The Proxy fails to disclose the following with respect to Morgan Stanley's Precedent Transactions Multiples Analysis: (i) the closing and announcement dates for the observed transactions; and (ii) the total values of the observed transactions.

29. The Proxy fails to disclose the following with respect to Morgan Stanley's Illustrative Precedent Premiums analysis: (i) the closing and announcement dates for the observed transactions; and (ii) the total values of the observed transactions.

30. The Proxy fails to disclose the following with respect to Morgan Stanley's Equity Research Analysts' Future Price Targets analysis: (i) the observed price targets; (ii) the sources of the price targets; and (iii) the inputs and assumptions underlying the discount rate.

Financial Projections

31. The Proxy Statement omits material information regarding Proofpoint's financial projections. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32. The Proxy fails to disclose the following regarding Proofpoint's financial projections: (i) the line items used to calculate EBIT; and (ii) the line items used to calculate unlevered free cash flow.

Potential Conflicts of Interest

33. The Proxy omits material information regarding potential conflicts of interest.

34. The Proxy fails to disclose the timing and nature of the past services Morgan Stanley provided to Thoma Bravo and its affiliates.

35. If disclosed, the omitted information would significantly alter the total mix of information available to Proofpoint's stockholders.

**COUNT I**

**Claim Against the Individual Defendants and Proofpoint for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

36. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.

38. Proofpoint is liable as the issuer of these statements.

39. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.

40. Due to their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

41. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

43. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

44. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

45. Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

47. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Proofpoint within the meaning of Section 20(a) of the Exchange Act as alleged herein.

49. Due to their positions as officers and/or directors of Proofpoint and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

52. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

53. The Individual Defendants violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

55. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

56. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  June 18, 2021	**GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*